JOHN REYNOLDS, Governor of the State of Illinois, plaintiff in error *v.* JAMES HALL, TIMOTHY GUARD, JOHN TILLSON, JR., CHARLES SLADE, FRANCIS PRINCE, CHARLES PRENTICE, JAMES B. CAMPBELL, ALFRED W. CAVARLY, and J. M. DUNCAN, defendants in error.

*Error to Fayette.*

The laws in force at the time of the making of contracts, form a portion of their essence, and they must be considered as entered into with reference to such laws, and be so construed.

The contract of a surety is to be construed strictly, both in law and equity, and his liability is not to be extended by implication beyond the terms of his contract.

Reynolds *v.* Hall *et al.*

The sureties of the late State Treasurer, are not liable for his acts as Cashier,of the old State Bank.

It is a well settled rule, that a surety cannot be held beyond the express terms of his undertaking, as understood by the parties, when the contract was entered into.

THIS cause was tried at the October term, 1831, of the Fayette Circuit Court, before the Hon. Theophilus W. Smith. The verdict of the jury was in favor of the plaintiff in error, for the sum of fourteen hundred and fifty dollars and forty-eight cents. Judgment was rendered upon this verdict.

ALFRED COWLES, for the plaintiff in error.

CAVARLY and McROBERTS, for the defendants in error.

SMITH, Justice, delivered the opinion of the Court:

This was an action of *debt* brought against James Hall and his sureties, on his official bond, given for the faithful performance of his duties as Treasurer of the state of Illinois, to which office he had been elected on the 28th day of December, 1828, by the vote of the legislature. The bond is dated on the 16th day of January, 1829, and was approved by the plaintiff, in his executive character, on the 22d day of the same month. The condition of the bond, after reciting, that the defendant, James Hall, had been elected Treasurer of the State of Illinois for two years, is as follows : " Now, if the said James Hall shall well and faithfully perform the duties of his said office, for and during his said term, then this obligation shall be void ; otherwise, it shall be and remain in full force."

The defendants replied—1st. General performance. 2d. That the defendant, Hall, had faithfully accounted for and paid over all moneys received by him, for which his sureties, as State Treasurer, were chargeable in this action, according to the tenor and effect of their bond. 3d. Set-off for certain sums, for which the State is indebted to said Hall for moneys deposited in Bank ; and certain expenditures of said defendant for and on account of said State: to which the plaintiff rejoined and took issue.

On the trial of the cause, a report of the situation of the State Bank of Illinois, at Vandalia, dated on the 1st January, 1831, signed by the said Hall, as Treasurer, showing, among other things, that he had received, on account of said Bank, considerable sums from the Branch Cashiers of said Bank, in the notes of said Bank, was offered in evidence; to the admission of which report as evidence, the defendants objected; which objection was sustained, and to which opinion of the Court, in refusing to admit the report as evidence, the plaintiff excepted. The bill of exceptions contains other matters to which it is not necessary to refer, as the additional points reserved in the bill have been, on the argument, abandoned by the plaintiff's counsel. The only point

relied on, among the causes assigned for error, is the rejection of the report offered as evidence.

On the part of the sureties of Hall, who are co-defendants, it is insisted that no evidence of the receipts of the funds or effects of the State Bank, by Hall, by virtue of the act of the legislature of 23d January, 1829, or any subsequent law of the State, imposing on Hall, the late Treasurer, the duties of Cashier of such Bank, could be introduced as legal evidence, to charge them with a liability in case of a misapplication of such effects or funds of the Bank, by the late Treasurer; and this is, as I understand, conceded to be the only point to be examined and determined.

In the consideration of this question, it is necessary to recur briefly to the Constitution of the State, creating the office of Treasurer, and the act of the legislature, defining his duties. The office of State Treasurer is created by the 21st section of the 3d article of the constitution; and the act of the 24th March, 1819, *"defining the duties of Auditor and Treasurer,"* was the only law in force, at the time of the execution, delivery, and approval, and acceptance of the bond. The 7th section of the act requires the Treasurer to give bond in the sum of twenty thousand dollars, and the residue of its provisions relate to the performance of duties, in regard to the fiscal operations of the State Treasury, and nothing else.

Under this law, then, we are to determine the liabilities of the sureties, and whether they can be held responsible for other duties cast upon the Treasurer, by the act of 1829, after the execution, approval, and acceptance of the bond.

Without examining the question which might here arise, as to what duties might thus be cast upon the Treasurer, and their appropriateness, it will be sufficient to enquire into the character of the act of 23d Jan., 1829, entitled *" An act to amend an act, supplementary to an act establishing the State Bank of Illinois, approved January 10th, 1825."* By the 7th section of that act, it is declared, " that the Treasurer shall discharge all the duties required of the Cashier of said Bank, by the act establishing the State Bank of Illinois." From this provision, it is manifest that the legislature cast upon the Treasurer the office of Cashier, and thereby constituted the Treasurer Cashier of the Bank *de facto.* Having by law imposed this new office upon him, and created new liabilities and new duties, of a character not only unconnected with the office of Treasurer, but of a diversified and entirely different nature, can it be contended that the sureties on his bond are justly and legally responsible for his want of fidelity in the discharge of this new trust? · It will be recollected that the Cashier of the Bank was required by law to give security in the sum of $50,000; and why, on the transfer of his duties, additional security from the Treasurer was not

D

required, it is not for this tribunal to determine. No increase of the Treasurer's bond was required; and it is inconsistent with the idea derived from the requirements of the law creating the Bank, to suppose that the sum of $20,000 required by the Treasurer's bond, would have been deemed sufficient, when these new and important and responsible duties were thus transferred, by a transfer of the office of Cashier.

The question then presented for consideration and decision, is, not whether it is within the bounds of legislative competency to impose additional duties on the Treasurer, connected with his office; nor whether those duties are appropriate or not; but whether, by law, there has not in fact been cast on the Treasurer an additional office, and he required to discharge the duties required by law of the former incumbent. If this be so, then it cannot be doubted that such of the defendants as are mere sureties of the Treasurer, cannot be holden responsible for the acts of the same individual in the performance of the duties of the office thus cast upon him. But if there can be a doubt entertained as to such an interpretation of the act of 1829, and whether or not it did not cast on the Treasurer a distinct and additional office, and the performance of its duties, still there is no rule of law better settled—one which has received the universal sanction of all tribunals—that the laws in force at the time of the making of contracts, form a portion of their essence, and that they must be considered as entered into with reference to such laws, and be so construed. The act of " 24th March, 1819, defining the duties of Treasurer," was the only law in existence at the time of entering into the bond; and by it, the rights and liabilities of the respective parties must be ascertained and determined. The sureties, when they signed the bond and entered into the covenant, could not be supposed to look elsewhere to ascertain the nature and extent of their liability. They saw that $20,000 was the extent, and that the duties which were required of the Treasurer, related alone to the fiscal concerns of the State, as defined in that law, and not to duties appertaining to a moneyed institution of a varied and peculiar character. It will be apparent that they could not have anticipated that the legislature intended, or would have subsequently cast on the defendant, Hall, the office and duties which were in fact so cast, afterwards, upon him. Apart, however, from this view of the case, there is another which is considered decisive as to the extent of the liability of the sureties.

The contract of a surety is to be considered strictly, both in law and equity, and his liability is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obli-

gation, is he bound, and no further.(1) In a case, also, determined in the United States Court,(2) it was decided that under a bond given on the 4th December, 1813, conditioned for the faithful discharge of the duties of his office, by a collector of direct taxes and internal duties, who had been appointed under the act of July 22d, 1813, by the President, on the 11th of November, 1813, to hold his office until the end of next session of the Senate, and no longer, and was re-appointed to the same office, January 24th, 1814, by the President, by and with the advice and consent of the Senate, to hold his office during the pleasure of the President, for the time being, the liabilities of the sureties are restricted to the duties imposed by the collection acts, passed *antecedent to the date of the bond.*

The act of 1829 could not be retroactive in its operations, but was entirely prospective. Although it imposed new and additional duties on the Treasurer, of a character in nowise connected with the office of Treasurer, and which, if it even be conceded, were mere duties appendant to the office of Treasurer, created by the act of 23d January, 1829, and was not the transfer of an additional office on him, and that in the character of Cashier, still the liabilities of the sureties could not be enlarged, or changed in any way, from what they actually were prior to the passage of this law.

As then the act of 1829 could in nowise interfere with the condition of the bond, could impose no new liabilities, nor in any way change its character, or extend its operations, by implication, I am of opinion, that the judgment of the Circuit Court should be affirmed.

*Separate opinion of* LOCKWOOD, *Justice.* I concur in opinion, that the judgment of the Circuit Court ought to be affirmed, upon the ground that the sureties of the Treasurer could not have contemplated any such increase of their responsibility, as necessarily took place by transferring the duties of Cashier of the State Bank to the Treasurer. Such additional responsibilities not being within the intention of either of the parties to the bond when it was executed and accepted by the Governor, to hold the securities responsible for the acts of the Treasurer, growing out of his management of the affairs of the Bank, would violate a well settled rule, that a surety cannot be held beyond the express terms of his undertaking, as understood by the parties, when the contract was entered into.

*Judgment affirmed.*

(1) Miller *v.* Stewart, et al. 9 Wheat. 680.
(2) U. S. *v.* Kirkpatrick, 9 Wheat. 729.